**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 19-cv-01130-RM-NYW

DARREN MARKLEY,

     Plaintiff,

v.

U.S. BANK NATIONAL ASSOCIATION d/b/a US Bank,

     Defendant.

---

**ORDER**

---

This age discrimination and wrongful termination case is before the Court on Defendant's

Motion for Summary Judgment (ECF No. 63), which has been fully briefed (ECF Nos. 75, 80).

The Court grants the motion for the reasons below.

## I.    LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine dispute of material fact and

the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp.

v. Catrett*, 477 U.S. 317, 322 (1986); *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir.

2018). Applying this standard requires viewing the facts in the light most favorable to the

nonmoving party and resolving all factual disputes and reasonable inferences in his favor.

*Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013). However, "[t]he mere

existence of some alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment; the requirement is that there be no genuine

issue of material fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248.

## II.    BACKGROUND

In March 2009, Defendant hired Plaintiff as the Senior Vice President and Managing Director of Private Wealth Management in its Denver location. (ECF No. 93 at ¶ 4.) Plaintiff's responsibilities included verifying and approving the compensation of Private Wealth Consultants, including Robert Provencher, who received commissions on financial product sales. (*Id.* at ¶¶ 5, 8.) Plaintiff reported to Mary Martuscelli, the Western Region President for Private Banking, and she in turn reported to Michael Ott, the President of Private Client Wealth Management. (*Id.* at ¶ 6.)

In June 2017, Plaintiff loaned Mr. Provencher $10,000, even though Defendant's policies prohibited employees from making personal loans to one another. (*Id.* at ¶¶ 9-11.) After conducting an investigation into the loan, Defendant issued Plaintiff a written warning in August 2017. (*Id.* at ¶ 12.)

In January 2018, Defendant initiated another investigation into Plaintiff's conduct after another employee, David Crittendon, reported that individuals were feeling pressured by Plaintiff

and Mr. Provencher to include Mr. Provencher on sales he was not involved with and that Mr. Provencher was receiving credit for sales in which he had not participated. (*Id.* at ¶¶ 13, 19, 20.) Plaintiff was asked to participate in a sale audit by supplying answers on a spreadsheet about Mr. Provencher's involvement in certain sales and client meetings. (*Id.* at ¶¶ 15, 16.) After an investigator was assigned to the case, he separately interviewed Plaintiff, Mr. Provencher, and nine other employees. (*Id.* at ¶¶ 20, 24.) During Plaintiff's February 26, 2018 interview, at which several other employees were present, Plaintiff alleged that other employees had retaliated against him for stopping Mr. Crittendon from holding over, or "sandbagging," a client sale from 2017 to 2018, a prohibited practice sometimes used to help meet sales goals. (*Id.* at ¶¶ 27, 88, 89.) Plaintiff asserts that Defendant failed to properly investigate the "sandbagging" allegation, while Defendant asserts that it reviewed the alleged incident and determined that it "did not actually happen" and "nobody did anything wrong." (ECF No. 93 at ¶ 28.) With respect to the allegations against Plaintiff, the investigator found that some of Plaintiff's assertions about Mr. Provencher's involvement were inconsistent with information provided by other employees. (*Id.* at ¶ 23.) On a March 1, 2018 telephone call, Plaintiff was given another opportunity to provide information relative to the investigation. (*Id.* at ¶ 30.) Defendant's investigator ultimately determined the allegations against Plaintiff were substantiated and concluded that Mr. Provencher had received $52,542 of unearned sales credit. (*Id.* at ¶¶ 31, 35.)

A Review Committee approved the investigator's report, which was then submitted to the Sales Misconduct Disciplinary Oversight Committee ("SMDOC") to determine the appropriate discipline for Plaintiff and Mr. Provencher. (*Id.* at ¶¶ 32, 34.) No member of the Review

Committee or the SMDOC knew Plaintiff's or Provencher's ages, both of whom were over fifty-five. (*Id.* at ¶ 33, 36, 39.) The SMDOC decided to fire Plaintiff and Mr. Provencher, and their employment ended on March 2, 2018. (*Id.* at ¶¶ 37, 39.)

Plaintiff filed this lawsuit in April 2019. (ECF No. 1.) In support of his Age Discrimination in Employment Act ("ADEA") claim, he asserts the true reason for his termination was age discrimination combined with retaliation for his allegation of "sandbagging" against Mr. Crittendon and others. He contends that Defendant fired him after "an unfair and improper investigation" and subjected him to "different terms and conditions of employment than younger employees." (*Id.* at ¶ 47.) In support of his state law wrongful termination claim, Plaintiff contends that Defendant fired him "in retaliation for having engaged in conduct that was protected or encouraged as a matter of public policy." (*Id.* at ¶ 51.)

## III. DISCUSSION

### A. Age Discrimination

The ADEA prohibits an employer from firing someone because of their age. *See Simmons v. Sykes Enters., Inc.*, 647 F.3d 943, 947 (10th Cir. 2011). A plaintiff does not have to establish that age was the sole motivating factor in the employment decision; rather, "an employer may be held liable under the ADEA if other factors contributed to its taking an adverse action, as long as age was the factor that made a difference." *Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1277 (10th Cir. 2010) (quotation omitted). Where, as here, there is no direct evidence of discrimination, ADEA claims are evaluated using the three-step framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Jones*, 617 F.3d at 1278. First, the plaintiff must establish a prima face case of discrimination. *Simmons*,

647 F.3d at 947. Second, the burden shifts to the employer to articulate legitimate, nondiscriminatory reasons for its action. *Id.* Third, if the defendant proffers such reasons, the burden shifts back to the plaintiff to show they are pretextual. *Id.* The Court finds Plaintiff cannot meet his burden at step three.

Generally, a plaintiff shows pretext by pointing to evidence that the defendant's stated reason for firing him was false, that the defendant acted contrary to an applicable policy, or that the plaintiff was treated differently from other employees who were similarly situated and engaged in conduct of comparable seriousness. *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000). In addition, the plaintiff may assert an age discrimination claim based on the theory of subordinate bias, or "cat's paw," liability. *Simmons*, 647 F.3d at 949. Under this theory, an employer may be liable where there is evidence the final decisionmaker, though lacking discriminatory intent, merely acted as a rubber stamp for a subordinate employee's prejudice. *See Kendrick*, 220 F.3d at 1231. In an age discrimination case, the plaintiff must establish the subordinate's animus was "the factor that made a difference" in causing the adverse employment action. *Simmons*, 647 F.3d at 949-50.

      1.    Subordinate Bias

Plaintiff does not allege that any member of the SMDOC, the final decisionmaker with respect to his termination, was biased, and he concedes that none of them was aware of his age.[1] As a matter of logic, "information of which an employer is unaware cannot be inferred to be the basis for the employer's decision to take action against the employee." *Hinds v. Sprint/United*

---

[1] Although he alleges bias by one member of the Review Committee, Mr. Wahl, he does so in a conclusory manner, as discussed elsewhere in this Order. To the extent the Review Committee's role is relevant here, the Court notes Plaintiff does not allege bias by the other two members of the Review Committee. Both committees reached their decisions unanimously.

*Mgmt. Co.*, 523, F.3d 1187, 1200-01 (10th Cir. 2008). Plaintiff argues instead that the SMDOC merely rubber-stamped the investigator's report at the urging of Mr. Ott and Chris Rohret, a Human Resources Manager. (ECF No. 75 at 8.) Plaintiff further asserts that Mr. Ott, and two other employees, Alison Hach and Jeff Wahl,[2] discriminated against him based on his age by assisting with the drafting of the final report and by recommending that he be fired. (*Id.*)

However, these conclusory allegations are insufficient to raise a genuine issue of material fact that these employees acted with age-based animus, much less demonstrate a causal connection between their actions and Plaintiff's termination. Plaintiff provides no reasons why he believes these employees were motivated by age-based animus. *Cf. Jones*, 617 F.3d at 1273 (reversing summary judgment where plaintiff cited evidence of age-related comments by three executive directors involved in his reassignment). The record reflects Mr. Ott was the same age as Plaintiff and that Mr. Wahl did not know Plaintiff's age when he participated on the Review Committee. (ECF No. 93 at ¶¶ 33, 48.) Plaintiff does not allege hearing these employees make age-related remarks or seeing them treat younger employees more favorably. Speculation about their motivation is insufficient to raise a genuine dispute that Defendant's asserted reason for firing Plaintiff was pretextual.

And even if Plaintiff could establish a genuine dispute as to whether these employees harbored age-based animus against him, he has not shown that Defendant would not have fired him but for these employees' alleged bias. Defendant asserts that the SMDOC relied on the

---

[2] In his Response to the Motion for Summary Judgment, Plaintiff cites his own deposition testimony asserting that these three employees discriminated against him. (ECF No. 75 at 8.) However, the following fact contained in Defendant's Undisputed Material Facts and Supporting Evidence is undisputed: "None of the Review Committee members [which included Mr. Wahl] knew Plaintiff or Provencher's ages or had met them in person, and Wahl and Abelgas [another member of the Review Committee] did not even know what Plaintiff or Provencher looked like." (ECF No. 93 at ¶ 33.)

investigator's final report, which concluded Plaintiff had violated Defendant's policy by helping

Mr. Provencher receive $52,542 of unearned sales credit. Although Plaintiff disagrees with the

final report, he has not shown that Defendant's explanation that it relied on the report contains

such weaknesses, implausibilities, inconsistencies, incoherencies, or contractions that a

reasonable factfinder could find it unworthy of credence. *See EEOC v. Horizon/CMS*

*Healthcare Corp.*, 220 F.3d 1184, 1198 (10th Cir. 2000). Although he faults the final report for

neglecting to state that Defendant's compensation plan for consultants does not set a minimum

level of involvement needed to claim a commission, he has not adduced evidence that the final

report contained false information.

Instead, Plaintiff argues that the investigation was not conducted in good faith. In

support of this argument, Plaintiff has identified what he sees as deficiencies in the investigation.

But he offers no evidence that the investigation was inadequate as a matter of law. "To prevail

on a subordinate bias claim, a plaintiff must establish more than mere 'influence' or 'input' in

the decisionmaking process. Rather, the issue is whether the biased subordinate's discriminatory

reports, recommendation, or other actions caused the adverse employment action." *EEOC v.*

*BCI Coca-Cola Bottling Co.*, 450 F.3d 476, 487 (10th Cir. 2006). Here, Plaintiff has not shown

that the allegedly biased employees influenced the investigation to such a degree that they caused

his termination. And it is clear that Plaintiff had multiple opportunities—including the initial

sale audit, his interview with the investigator, and the March 1 telephone call—to explain his

version of the pertinent events. *See id.* at 488 (noting employer may in some cases defeat

inference that its decision relied on biased subordinate by simply asking employee for his version

of events); *see also Kendrick*, 220 F.3d at 1231 (emphasizing importance of plaintiff's being

asked to give his version of events).   Plaintiff has not shown Defendant relied exclusively on the

say-so of the allegedly biased employees notwithstanding his suggestions that different accounts

should have been included in the sale audit and that the investigator should have taken more

notes and conducted credibility assessments.

Plaintiff's contention that Mr. Ott told Defendant's investigator on February 13, 2018 that

Plaintiff should be fired, before any witnesses had been interviewed, is also unavailing.  (ECF

No. 75 at 11.)  Even assuming Mr. Ott made such a declaration based on limited evidence

available at that time, Plaintiff has not shown that Mr. Ott's statement was motivated by

Plaintiff's age.  Indeed, Plaintiff and Mr. Ott were the same age.  Further, Mr. Ott was aware that

Plaintiff had already received a written warning for violating Defendant's policy by loaning

money to Mr. Provencher.  There is no evidence that this alleged statement or Mr. Ott's setting

of a deadline to complete the investigation and asking the SMDOC for a "quick turnaround"

preordained the result of the investigation or even tainted it in any way.  *See EEOC*, 450 F.3d

at 487 (stating that mere "influence" or "input" in decisionmaking process will not support claim

of subordinate bias).  Defendant's investigator went on to conduct eleven employee interviews,

and Plaintiff was given multiple opportunities to provide his perspective on the relevant conduct.

The report produced by the investigator was subject to review by the Review Committee and the

SMDOC.  Thus, Plaintiff has not provided evidence that Mr. Ott's or anyone else's alleged bias

was the "but for" cause of his termination.

2.     False Justification for Termination

When a plaintiff attempts to make a showing of pretext with evidence that the employer's

stated reason for firing him was false, the Court considers the facts as they appeared to the

decisionmaker at the time of the adverse employment decision. *See Kendrick*, 220 F.3d at 1231.

"The pertinent question in determining pretext is not whether the employer was right to think the

employee engaged in misconduct, but whether that belief was genuine." *Timmerman v. U.S.*

*Bank, N.A.*, 483 F.3d 1106, 1119 (10th Cir. 2007) (quotation omitted). The Court's role is not to

act as a "super personnel department," second guessing employers' honestly held (even if

erroneous) business judgments. *Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006).

Plaintiff has not shown that the SMDOC did not honestly believe that the results of the

investigation provided reasonable grounds for firing him. Although he refers to "documents that

could have objectively disproved the allegations of misconduct" (ECF No. 75 at 13), he has

neither provided nor described such documents. Likewise, he argues that his supervisor,

Ms. Martuscelli, who was caring for an ill family member during the relevant timeframe and not

interviewed by the investigator, "could have provided substantive information to refute the

allegations against [him]" (ECF No. 75 at 14) without further explanation. This omission is

particularly glaring because Plaintiff does not dispute that Ms. Martuscelli concurred with

Mr. Ott's opinion that Plaintiff committed fraud. (ECF No. 93 at ¶ 115.) These unsupported

assertions are insufficient to raise a genuine issue as to whether Defendant could reasonably

believe Plaintiff's conduct violated its policy.

Plaintiff also argues his termination is inconsistent with "known facts." (ECF No. 75

at 15.) The "known facts" supporting this argument seem to be that Plaintiff did not directly

benefit from his alleged misconduct and was not even accused of doing so, which, according to

Plaintiff, renders Defendant's stated reason for firing him unworthy of belief. But although

Defendant did not accuse Plaintiff of personally benefitting from his conduct, that alone does not

establish the absence of any benefit to Plaintiff. Reciprocity takes many forms. In any event, Plaintiff has identified no authority for the nonsensical proposition that an employer may not fire an employee for violating its policy unless it establishes that the employee personally benefitted from the misconduct or, at least, accuses the employee of doing so. Accordingly, the Court finds Plaintiff's assertion that he did not personally benefit from his conduct is not sufficient to establish pretext in this case.

### 3.    Action Contrary to a Written Company Policy

Plaintiff next argues Defendant failed to follow its own policy of thoroughly investigating allegations of sales misconduct and retaliation on the basis of reporting sales misconduct. Plaintiff alleges that in the months preceding his termination, he prevented members of his team, including Mr. Crittendon, from "sandbagging" a sale, which is a violation of Defendant's policy. In his interview with Defendant's investigator, Plaintiff explained why he believed this incident provided a motive for other employees to retaliate against him. At that point, however, the investigation into Plaintiff's conduct was well underway. From the Court's perspective, the extent to which Defendant investigated Plaintiff's "sandbagging" allegations is separate from the issue of whether Defendant followed its own polices with respect to Plaintiff's termination. "A plaintiff alleging age discrimination must . . . prove age was a 'but for' cause of [his] termination." *Simmons*, 647 F.3d at 949. Further, there is evidence in the record that Defendant looked into the incident and concluded that no "sandbagging" attempt actually occurred. (*See* ECF No. 93 at ¶¶ 27, 28.) The Court considers "the facts as they appear to the people making the decision." *See Smothers v. Solvay Chemicals, Inc.*, 740 F.3d 530, 543 (10th Cir. 2014) (quotation omitted). The circumstantial and tangential evidence Plaintiff relies on here is

insufficient to allow a reasonable jury to conclude Defendant's termination of Plaintiff violated its own written policy.

### 4. Treatment of Similarly-Situated Employees

Finally, Plaintiff contends he learned through discovery that Defendant accused a Market Leader, Margaret Paddock, of similar conduct—approving a consultant's unearned sales credit—yet she was not investigated or disciplined. Plaintiff does not provide any context for this allegation. He does not provide Ms. Paddock's age or state whether they had the same supervisor. He does not state whether she previously received a written warning for conduct involving the same consultant. In its Reply, Defendant states that Ms. Paddock, being born in 1970, is in the same protected group as Plaintiff, and that she was not implicated in any wrongdoing. (ECF No. 80 at 13.)

In assessing whether employees are similarly situated, the Court considers "the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees." *Kendrick*, 220 F.3d at 1232. "Individuals are considered 'similarly-situated' when they deal with the same supervisor, are subjected to the same standards governing performance evaluation and discipline, and have engaged in conduct of 'comparable seriousness.'" *EEOC v. PVNF, LLC*, 487 F.3d 790, 801 (10th Cir. 2007). In the absence of important details that would permit a proper assessment, the Court finds Plaintiff's threadbare allegation regarding Defendant's treatment of Ms. Paddock, devoid of context or evidentiary support, fails to raise a genuine dispute as to pretext.

In sum, there is no genuine issue as to whether Defendant's explanation for firing Plaintiff was pretextual, and Defendant is entitled to summary judgment on Plaintiff's ADEA claim.

### B. Wrongful Discharge

When all federal claims have been dismissed, district courts in this Circuit may decline jurisdiction over state claims. *See Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."). Having determined that Defendant is entitled to summary judgment on Plaintiff's federal claim, the Court declines to exercise supplemental jurisdiction over his state claim, which is dismissed without prejudice.

## IV. CONCLUSION

Therefore, the Court GRANTS Defendant's Motion for Summary Judgment (ECF No. 63) and directs the Clerk to ENTER JUDGMENT in Defendant's favor and CLOSE this case.

DATED this 28th day of May, 2020.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge